Patrick B. BROWN *v.* STATE of Arkansas

CA CR 97-1529                                    972 S.W.2d 956

Court of Appeals of Arkansas
Division III
Opinion delivered September 2, 1998

*Ben Seay*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Gil Dudley*, Ass't Att'y Gen., for appellee.

JOHN B. ROBBINS, Chief Judge. Appellant Patrick B. Brown was accused of stealing an amplifier, compact-disc player, and rack-mount mixer from First United Methodist Church in Magnolia, Arkansas. Following a jury trial, he was found guilty of commercial burglary and theft of property, and was sentenced as a habitual offender to twenty-five years in the Arkansas Department of Correction. Mr. Brown now appeals, and his sole argument for reversal is that the trial court erred in permitting the State to

introduce evidence of pawn transactions involving items other than those that were alleged to have been stolen. We affirm.

Prior to the trial, Mr. Brown filed a motion in limine with regard to the disputed evidence. In support of his motion, he asserted that evidence regarding the pawning of other items, such as a television and VCR, were irrelevant and, at any rate, any possible probative value was substantially outweighed by the danger of unfair prejudice. Mr. Brown intimated that introduction of other pawned items would lead the jury to believe that he had also stolen these items, and that this constituted impermissible evidence of other crimes pursuant to Rule 404(b) of the Arkansas Rules of Evidence. The trial court denied the motion in limine, and permitted the State to introduce evidence of all of the pawn transactions.

During the trial, the testimony of a church employee established that someone had forced entry into the church and stolen the three items that Mr. Brown was accused of stealing. Then, over the objection of Mr. Brown, a pawnbroker testified as to a number of transactions involving Mr. Brown and his ex-girlfriend. According to pawn records, Mr. Brown's ex-girlfriend pawned the stolen amplifier and mixer on October 10, 1996, which was just a few days after the church was burglarized. Then, on October 31, 1996, she pawned the stolen compact-disc player. It was also established that, between October 10, 1996, and November 9, 1996, she pawned a VCR, a different compact-disc player, a microwave, and two televisions. The records also revealed that Mr. Brown pawned two of the same items that were pawned by his ex-girlfriend, and that these two items were not the ones that he was accused of stealing. Although the trial court allowed evidence of all of the pawn transactions, it did give the following cautionary instruction to the jury:

> Ladies and gentlemen, [the prosecutor] is eliciting testimony from [the pawnbroker] with respect to a series of transactions. You are only to consider, the only thing at the heart of this case is [sic] items that were allegedly stolen from the First Methodist Church. So, anything else that is done is just for purposes of showing, I guess the transactions. But you are not to consider anything but the three that have come from the First United

Methodist Church and that were allegedly stolen by Mr. Brown. Okay? All right.

Mr. Brown's ex-girlfriend also testified on behalf of the State and acknowledged that she pawned several items during the time period at issue. As for the three items that were alleged to have been stolen, she testified that Mr. Brown brought them to her house, and that they proceeded to a pawnshop with the items shortly thereafter. The ex-girlfriend stated that, after the items were pawned, Mr. Brown informed her that he had stolen them from the Methodist church. As for the other items, she testified that Mr. Brown also brought them to her house, and that afterwards they would pawn them. During a conference outside of the hearing of the jury, Mr. Brown's counsel considered objecting to the ex-girlfriend's statement regarding the other items, but decided not to request a cautionary instruction for fear that it might serve to emphasize that these items were probably stolen also.

For reversal, Mr. Brown argues that the trial court erred in failing to suppress evidence of other pawn transactions, and specifically relies on *Smith v. State*, 19 Ark. App. 188, 718 S.W.2d 475 (1986). In that case, we stated:

> Rule 404(b) permits evidence of other crimes, wrongs or acts in order to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Such evidence, however, is not admissible to prove the character of a person in order to show that he acted in conformity therewith. Evidence of other crimes must pass two tests to be admissible: (1) the other crimes' evidence must be independently relevant, and (2) must meet the probative value versus unfair prejudice balancing test of U.R.E. Rule 403.

*Id.* at 191, 718 S.W.2d at 477. Mr. Brown contends that evidence of the other pawn transactions was not relevant to the charges against him, and submits that it was highly prejudicial in that it likely gave the jury the impression that he had stolen all of the items that were pawned.

In its brief, the State asserts that the disputed evidence was admissible to show that Mr. Brown committed the crime charged

and other crimes using the same method of operation. In *Christian v. State*, 54 Ark. App. 191, 925 S.W.2d 428 (1996), we stated:

> Rule 404(b) does not mention modus operandi as one of the bases for introducing evidence of other crimes; however, the list of exceptions to inadmissibility contained in the rule is not an exclusive list but rather represents examples of the types of circumstances where evidence of other crimes or wrongs would be relevant and admissible.

*Id.* at 196, 925 S.W.2d at 431. In the instant case, the State submits that evidence of the other pawn transactions was relevant to establish that Mr. Brown's mode of operation was to steal electronic equipment and accompany his girlfriend to the same pawnshop and exchange it for cash.

The admission or rejection of evidence under Rule 404(b) is left to the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *Jarrett v. State*, 310 Ark. 358, 833 S.W.2d 779 (1992). We reject the State's contention and find that the trial court abused its discretion in permitting evidence of the other pawn transactions.

In *Diffee v. State*, 319 Ark. 669, 894 S.W.2d 564 (1995), our supreme court held that the two requirements for introducing evidence of an unrelated prior act to show method of operation are as follows: (1) both acts must be committed with the same or strikingly similar methodology, and (2) the methodology must be so unique that both acts can be attributed to one individual. *Id.* at 675, 894 S.W.2d at 567. In the case at bar, the other acts at issue were made in a similar fashion as the crime charged, but were not so unique that they could be attributed to only one individual. Indeed, Mr. Brown's girlfriend was the one who actually pawned the stolen items at issue, and the practice of pawning stolen property is apparently not uncommon in light of the pawnbroker's testimony that he sent a daily fax to the police station in which he reported all items that were pawned at the shop. Therefore, we find that evidence of the other pawn transactions was not admissible to prove modus operandi, or for any other purpose.

Despite the admission of inadmissible evidence, we affirm because the disputed evidence was harmless. We reach this conclusion pursuant to the precedent set by the Arkansas Supreme Court in *Abernathy v. State*, 325 Ark. 61, 922 S.W.2d 723 (1996).

In *Abernathy v. State, supra*, the appellant was charged with murder after he had beaten his girlfriend to death. In an attempt to bolster its case, the State introduced evidence of prior bad acts, and in its opinion on appeal the supreme court outlined the significance of the evidence as follows:

> Despite this overwhelming evidence it had against appellant, the State chose to introduce at trial the testimony of four witnesses regarding alleged prior threats and acts of violence by him. The State's theory was that this evidence was necessary to refute the theory that [the victim's] killing was an accident. We need only discuss the most egregious of this prior-bad-act evidence, which was offered in the form of testimony of Sam Abernathy, appellant's stepbrother. Sam testified that on January 9, 1993, appellant kicked open the front door of his apartment in the middle of the night and shot him in both thighs, causing a compound fracture in one of his legs necessitating surgery. After Sam, who was unarmed, had fallen to the floor, appellant stood over him and kicked him in the head.

The supreme court held that, because the uncharged act perpetrated against Sam Abernathy was not sufficiently similar to the charged offense, the trial court abused its discretion in allowing Sam Abernathy to testify with regard to the prior violent conduct. Nevertheless, the supreme court affirmed pursuant to its conclusion that the error was harmless in light of the overwhelming competent evidence of guilt. Citing *Rockett v. State*, 318 Ark. 831, 890 S.W.2d 235 (1994), the court announced that when the evidence of guilt is overwhelming and the error is slight, it can declare the error harmless and affirm. The court found it significant that the jury was admonished not to consider Sam Abernathy's testimony as evidence of character or proof that the appellant acted in conformity therewith.

In the instant case, there was overwhelming evidence against Mr. Brown given that the three items at issue were confirmed stolen and his ex-girlfriend testified that he admitted to

breaking into the church and stealing them. The evidence also included the testimony of Robert Beal, a friend of Mr. Brown, who testified that he remembered seeing the Kenwood amplifier, which was one of the articles stolen from the church, in Mr. Brown's house; and that he drove Mr. Brown and Victoria Moore with this amplifier to the pawnshop where they went in and pawned it. Moreover, the error in admitting evidence of the other pawn transactions was relatively slight given that it was not established or even directly asserted that these items were stolen, and the jury was admonished to consider only the pawn transactions involving the items that were alleged to have been stolen. Under these circumstances, we find the evidentiary error to be harmless.

In reaching our decision in this case, we are not unmindful of this court's discussion of Rule 404(b) in *Smith v. State, supra.* In that case, we cited *Golden v. State,* 10 Ark. App. 362, 664 S.W.2d 496 (1984), and offered the following analysis:

> The probative value of evidence correlates inversely to the availability of other means of proving the issue for which the prejudicial evidence is offered. In other words, if the state has no other means to prove the issue, then the evidence is highly probative, and that may outweigh its prejudicial effect. However, in cases where the state has other means of proving the issue, then the balance is tipped in favor of it being excluded because of its prejudicial effect.

*Smith v. State,* 19 Ark. App. at 191, 718 S.W.2d at 477. We recognize the apparent inconsistency in the above language and the precedent set by our supreme court in *Abernathy v. State, supra.* However, the *Abernathy* case presents the most recent authority on this issue. More importantly, any inconsistency between precedents set by the supreme court and the court of appeals must be resolved in favor of the precedent announced by the supreme court, and it is well established that this court is without authority to overrule a decision of the supreme court. *See Roark v. State,* 46 Ark. App. 49, 876 S.W.2d 596 (1994).

Affirmed.

STROUD and ROAF, JJ., agree.